UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-193-H

REBECCA HAMPTON                                                      PLAINTIFF

V.

R.J. CORMAN RAILROAD SWITCHING CO., LLC, et. al.         DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff was seriously injured when she drove her vehicle into a train that was stopped on a railroad crossing on River Road in Louisville, Kentucky. In this lawsuit, Plaintiff alleges that Defendants are legally at fault for failing to properly maintain the warning lights at the crossing. Defendants have moved for summary judgment based on two legal theories: (1) Plaintiff's claims are pre-empted by federal law; and (2) Kentucky's common law "occupied crossing" rule bars Plaintiff's claims. The Court has considered these legal arguments in light of the realistic facts of this case. For the reasons that follow, and because the Court believes that no reasonable juror could find that Defendants caused this accident, the Court concludes that summary judgment is appropriate.

**I.**

Except for a few points, the facts of this case are undisputed.

Around midnight on October 16, 2005, Plaintiff went to a Louisville night club for a social outing. Plaintiff remained at the club for approximately two hours, during which time Plaintiff "probably had a couple of beers." (Pl.'s Dep. 60:9-10, Mar. 24, 2009.) Around 2:15 a.m., Plaintiff left the nightclub and began driving east on River Road toward her home. She made this drive regularly and was familiar with the road and its railroad crossings.

At the time Plaintiff was driving home, a railroad train was servicing the Nugent Sand Company on River Road. Defendants owned the train and had responsibility for maintaining the road crossing leading to the Nugent facility. As Plaintiff approached the railroad crossing on River Road, the train was stopped on the crossing with one of its center cars blocking the road. In fact, the train was stationary for some time and the car blocking the road was a red, traditional box car.

Plaintiff remembers very little about the accident. Upon leaving the nightclub, she placed a cell phone call to a friend.[1] Then, in Plaintiff's words, "I was driving down River Road and I look up and I hit a train." (Pl.'s Dep. 30:25 - 31:1.) Plaintiff did not see the train until she hit it; she made no attempt to apply her brakes prior to striking the train. The collision caused significant damage to the car and serious injuries to Plaintiff. Fortunately, Plaintiff survived the accident.

A train worker noticed the accident and called for help. Emergency personnel arrived shortly and began treating Plaintiff's injuries and investigating the accident. Several emergency workers have noted that Plaintiff smelled of alcohol and at least one has observed that her eyes were red and glassy. The responding police officer asked Plaintiff to consent to taking a blood alcohol test, but Plaintiff refused. Plaintiff was subsequently charged with driving under the influence, but the state dismissed those charges for lack of evidence.

The railroad crossing was equipped with flashing red warning lights funded by the federal government. The only supposed factual dispute concerns whether these lights were functioning at the time of the accident. Plaintiff argues that the lights were not functioning. In

---

[1] Plaintiff says that approximately one mile before the railroad crossing, she hung up her cell phone.

support of this view, she presents the deposition testimony of her "uncle," who arrived after the accident. However, he cannot remember whether the signal lights were flashing or not. On the other hand, the railroad employees have testified that the lights were flashing properly at the time of the accident. Defendants have further supplied expert testimony that the lights worked before the accident, after the accident and that they would have worked during the accident. Finally, Defendants have provided a photograph taken by the police officer about thirty to forty-five minutes after the accident that shows the lights flashing on the opposite side of the train.

## II.

Defendants first argue that the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20106, preempts Plaintiff's claims. That statute expressly preempts all state law claims where federal law or regulations cover the subject matter of the state claim. Thus, when the federal government funds the warning devices at a crossing, the FRSA expressly preempts any state law claim based on the inadequacy of those warnings. *See Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 359 (2000) ("once the FHWA approved the project and the signs were installed using federal funds, the federal standard for adequacy displaced Tennessee statutory and common law addressing the same subject, thereby pre-empting respondent's claim."). Here, federal funds were used to install the flashing light warning system at the River Road crossing. Thus, to the extent Plaintiff's claim is premised on an argument that flashing lights were insufficient and other warnings should have been in place, the FRSA bars that claim.

Plaintiff does not contest this part of the preemption analysis. Rather, Plaintiff asserts that her claim is based on a failure to maintain the existing approved warning system. For Plaintiff to succeed on such a claim, she would need to prove: (1) the lights were not flashing at

3

the time of the accident; (2) the lights were not flashing because of some negligence on the part of Defendants; and (3) the absence of the flashing lights was a substantial factor in causing the accident. Defendants contend that this claim fails for a number of reasons.

First, Defendants argue, largely based on the photograph of the scene showing the lights flashing on the opposite side of the track, that it cannot be reasonably disputed that the warning lights were flashing that evening. This evidence is certainly strong and potentially conclusive. Still, there is a material factual dispute on this issue. Plaintiff's witness suggests that the lights were not flashing at the time of the accident. The photograph, taken thirty minutes after the accident, depicts the other side of the crossing. The Court suspects that Plaintiff's evidence will be insufficient to convince a reasonable jury that the lights were not operational. A decision as to the validity of Plaintiff's evidence on this issue should probably await the actual testimony at trial.

Second, Defendants seem to argue that even if the lights were not flashing, the FRSA preempts Plaintiff's claim because Defendants installed the lights with federal funds. The Court disagrees. In *Shanklin*, the Court distinguished the case of *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993). In *Easterwood*, the Court considered a train accident at a crossing where federal funds had been designated to put a crossing gate in place. However, the crossing gate was never installed and the funds were diverted elsewhere. Because the warning device approved by the government was never installed, the Court found that the common law claim for failure to warn was not preempted. *Id.* at 672. Our case is comparable. While the funds here were used to install the warning device, Plaintiff asserts that the device was inoperable on the night in question. If Plaintiff can prove that contention to a jury, it was as if the warning system

4

was not installed, just like in *Easterwood*. Therefore, Plaintiff's claims are not preempted.

Moreover, the FRSA was amended after *Shanklin* and reads,

> **(b) Clarification regarding State law causes of action**.--**(1)** Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--
>
> **(A)** has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>
> **(B)** has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> **(C)** has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106 (emphasis in original). This clarification certainly insinuates that claims are not preempted where the railroad company failed to comply with the regulations that would provide preemption.

All discovery is complete and Plaintiff has presented no specific evidence of negligence on Defendants' part concerning the alleged failure of the flashing lights. Absent such evidence, it is difficult to see how the case can proceed to a jury. However, Defendants did not raise the "failure of evidence" issue in their motion for summary judgment and, thus, it is not ripe for the Court's review at this time.

## III.

Defendants next argue that even if the warning lights were not flashing properly on the night in question, Kentucky's occupied crossing rule bars any recovery by Plaintiff. This common law rule establishes that "[i]n the absence of a statute imposing an absolute obligation [to provide a warning], a railroad company is not bound to have gates, lights, or other warnings at

5

a crossing in order to prevent [a vehicle hitting a train already occupying the crossing]." *Wright v. Illinois Cent. Gulf. R. Co.*, 550 S.W.2d 489, 491-92 (Ky. 1977). The occupied crossing rule expresses the common sense notion that Defendants had no legal duty to provide *any* warning; the presence of the train being warning enough. Here, there is no dispute that Defendants' train was already occupying the crossing when Plaintiff's vehicle approached and struck it. Thus, unless Plaintiff can show the existence of such an absolute statutory obligation, the occupied crossing rule would bar Plaintiff's claim.[2]

A.

Plaintiff first points to a number of Defendants' internal rules as establishing a duty to warn. The first of those rules, number 100-D, deals only with the length of time a train may be stopped across a track. This rule provides no additional duty to warn. Rule number 100-E(4), the next rule cited by Plaintiff, deals only with the use of caution in approaching a crossing equipped with motion detectors. It provides no duty to have flashing lights. None of these rules or others provides either a statutory obligation or any other type of an "absolute obligation" requiring flashing lights at crossings.

Next Plaintiff relies on Ky. Rev. Stat. § 277.200. That statute reads, "No railroad company shall obstruct any public highway or street . . . by stopping and permitting trains, engines or cars to stand upon a public grade crossing . . . for more than five (5) minutes at any one

---

[2] Plaintiff seems to argue that Defendants' regulations may have required additional warnings beyond the flashing lights. However, any such claim is preempted as explained in Section II. Thus, Plaintiff must present a statute that specifically and absolutely *requires* Defendants provide the flashing light warning.
 Plaintiffs also argue that the warning was necessary because it was customary for it to be present. However, the cases requiring customary warnings deal only with instances where the train is not already covering the crossing. *See, e.g., Cincinnati, N.O. & T.P. Ry. Co., et al. v Prewitt's Adm'r*, 262 S.W. 1 (Ky. 1924). In those cases, the warnings are required to notify the vehicle that a train is approaching. However, that logic is inapplicable where the train is already occupying the crossing. As the occupied crossing rule states, the presence of the train is warning enough.

6

time, unless such stopping and standing is caused by circumstances beyond control of the railroad company." Nothing in § 277.200 provides a duty to warn when a train is parked on a crossing. In fact, this statute has little relevance in this case. Clearly, the statute is designed to allow for the efficient flow of traffic. It has nothing to do with providing a warning about the presence of the train.

Finally, Plaintiff relies on several federal regulations as providing a duty to give a warning. The first of those regulations is 49 C.F.R. § 234.5. That section, however, merely defines an "activation failure;" it does not provide any affirmative duty on the part of the railroad company. The remaining federal regulations cited by Plaintiff, specifically 49 C.F.R. § 234.217, 49 C.F.R. § 234.209 and 49 C.F.R. § 234.227, all deal only with the proper maintenance of railway crossings and warning systems. They too do not provide an absolute obligation to warn of the presence of a train.

Plaintiff cites nothing further to provide a statutory duty to have flashing lights.

B.

The Court's analysis could end here; it is Plaintiff's burden to present the basis of her claim. However, the Court will consider two additional statutes. First, the Court considers the preemption statute itself. That statute does not actually *require* any warnings; rather, the statute provides that *if* a railroad gives the warnings the federal government approves, then the railroad cannot be sued for inadequate warnings. Where the railroad does not provide the warnings approved by the federal government, as Plaintiff claims Defendants did here, the claim is governed by the common law. Here, the common law is the occupied crossing rule.

Second, the Court considers 23 C.F.R. § 646.214. In essence, that regulation provides that

where federal funds are to be expended on highway crossing projects, the projects must meet certain safety requirements, including the creation of warning devices. It could be argued that because federal funds were used on this project and the federal government approved of the flashing lights as a warning device, the railroad was required to have such a warning. However, the Court believes that the primary function of the federal statutory scheme is to establish preemption, not to create affirmative duties on the part of the railroad that give rise to private causes of action by individual plaintiffs.

In sum, the Court finds that Plaintiff has failed to establish an "absolute statutory obligation" to warn of the presence of the train on the crossing. Therefore, the occupied crossing rule applies and holds that the presence of the train was, in and of itself, sufficient warning. Therefore, Plaintiff has no claim under Kentucky law.

**IV.**

Even if a statute did create an absolute duty to provide the flashing light warning, the Court finds that Plaintiff has presented insufficient evidence of causation for a reasonable jury to find in her favor. Most Kentucky cases discussing the occupied crossing rule do so only in the context of duty. However, at least one case has discussed the rule in the context of causation. Its general logic, undiminished by time, is instructive here.

In *Louisville & Nashville R. Co. v. Branson*, 267 S.W.2d 945 (Ky. 1954), Kentucky's highest court considered the application of the occupied crossing rule where the train failed to give a statutorily required whistle blow as he entered the track. The court reversed a jury verdict in favor of the plaintiff and directed a judgment in favor of the railroad company holding, "It would seem in any even that the failure to give such signals would not be the proximate cause of

the accident, because the motorist is given more immediate and imperative notice by the obvious presence of the train itself." *Id.* at 946. The court reached this conclusion even though, in *Branson*, the vehicle struck the train on a "dark, foggy night." *Id.* at 945. Here, there is no evidence of any fog or other weather conditions that would have prevented Plaintiff from seeing the train.³ Thus, like in *Branson*, the failure to give a warning would not be the proximate cause of the accident, because Plaintiff had immediate notice by the obvious presence of the train itself.

The evidence in this case is that Plaintiff collided with a stationary train which was in plain view. The evidence is that she did not apply her brakes prior to the collision. The only reasonable conclusion from these facts is that Plaintiff's attention as she approached the intersection was somehow completely diverted from the obvious hazard in plain view, even at the last moment. Plaintiff's failure to see this open and obvious hazard in her path caused the accident. The logical application of the occupied crossing rule and indeed, the application of reasoned logic, would preclude a reasonable jury from finding any legal fault on the part of Defendants.

---

³ In fact, a review of the weather report for that evening shows that winds were calm and it was clear with 10 miles of visibility. *See October 2005 Louisville, KY Local Climatological Data*, Local Climatological Data Publication (National Oceanic and Atmospheric Administration, National Climatic Data Center, Asheville, N. Car.), Oct. 2005. Also, the moon was 99% illuminated that evening. *See* Complete Sun and Moon Data for One Day: U.S. Cities and Towns, http://www.usno.navy.mil/USNO/astronomical-applications/data-services/rs-one-day-us (last visited May 13, 2010).

The Court will issue an Order consistent with this Memorandum Opinion.

cc: Counsel of Record